1
2
3
4
5
6

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Ty D. Frankel (AZ Bar No. 027179)*
*tfrankel@bffb.com*

7
8
9
10
11

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone: (619) 756-7748*
*Patricia N. Syverson (AZ Bar No. 020191)*
*psyverson@bffb.com*

12

13 **IN THE UNITED STATES DISTRICT COURT**

14 **DISTRICT OF ARIZONA**

| | |
|---|---|
| 15 Maribel Alvarez, | Case No. _____ |
| 16       Plaintiff, | **COLLECTIVE ACTION AND** |
| 17 v. | **CLASS ACTION COMPLAINT** |
| 18 Direct Energy Business Marketing, LLC, | **[JURY TRIAL DEMANDED]** |
| 19 Direct Energy Business, LLC, dba DE Business, LLC, Direct Energy Services, | |
| 20 LLC, Direct Energy Contact Center, Clockwork Acquisition II, Inc., Direct | |
| 21 Energy Leasing, LLC, fka HWOA, LLC, Direct Energy US Home Services, Inc., | |
| 22 dba DE Direct Energy US Home Services, Inc., Direct Energy Marketing, Inc., | |
| 23 Centrica Connect Home US, Inc., Centrica Holdco GP, LLC, Centrica Holdco, Inc., | |
| 24 Centrica US Holdings, Inc., Home Warranty of America, Inc., | |
| 25 | |
| 26       Defendants. | |
| 27 | |
| 28 | |

Plaintiff Maribel Alvarez, individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiff") for her Complaint against Defendants Direct Energy Business Marketing, LLC, Direct Energy Business, LLC, dba DE Business, LLC, Direct Energy Services, LLC, Direct Energy Contact Center, Clockwork Acquisition II, Inc., Direct Energy Leasing, LLC, fka HWOA, LLC, Direct Energy US Home Services, Inc., dba DE Direct Energy US Home Services, Inc., Direct Energy Marketing, Inc., Centrica Connect Home US, Inc., Centrica Holdco GP, LLC, Centrica Holdco, Inc., Centrica US Holdings, Inc., Home Warranty of America, Inc., (collectively "Direct Energy") alleges as follows:

## I. NATURE OF THE CASE

1.     Plaintiff brings this action against Direct Energy for its unlawful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (hereinafter "FLSA") and its unlawful failure to pay wages due in violation of the Arizona Wage Statute, A.R.S. §§ 23-351-353, and 23-355.

2.     This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime compensation, liquidated damages, statutory penalties and damages owed to Plaintiff and all others similarly situated.  This lawsuit is also brought as a class action under Federal Rule of Civil Procedure 23, to recover unpaid compensation and treble damages resulting from Direct Energy's violations of the Arizona Wage Statute.  For collective action and class action purposes, the proposed Class consists of:

> All current and former Direct Energy Customer Service Representatives who worked at a Direct Energy call center in Arizona during the Liability Period ("Customer Service Representatives").

3.     For at least three (3) years prior to the filing of this action (the "Liability Period"), Direct Energy had and continues to have a consistent policy and practice of suffering or permitting employees who worked as Customer Service Representatives,

1   including Plaintiff, to work well in excess of forty (40) hours per week, without paying
2   them proper overtime compensation and incentive pay due as required by federal and state
3   wage and hour laws.  Plaintiff seeks to recover unpaid overtime compensation, including
4   interest thereon, statutory penalties, reasonable attorneys' fees and litigation costs on
5   behalf of herself and all similarly situated current and former Customer Service
6   Representatives.  Plaintiff and all similarly situated current and former Customer Service
7   Representatives who may opt-in pursuant to 29 U.S.C. § 216(b) also seek liquidated
8   damages.

9   　　　　4.　　　Plaintiff intends to request the Court authorize notice to all similarly situated
10   persons informing them of the pendency of the action and their right to "opt-into" this
11   lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking overtime compensation
12   and liquidated damages under federal law.

13   **II. JURISDICTION AND VENUE**

14   　　　　5.　　　This Court has jurisdiction over the subject matter and the parties hereto
15   pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

16   　　　　6.　　　Plaintiff's state law claim is sufficiently related to the FLSA claim that it
17   forms part of the same case or controversy.  This Court has supplemental jurisdiction over
18   Plaintiff's claim under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

19   　　　　7.　　　Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because
20   all or a substantial part of the events or omissions giving rise to the claims occurred in the
21   State of Arizona within this District.  Plaintiff was employed by Direct Energy in this
22   District.

23   **III. PARTIES**

24   　　　　8.　　　At all times relevant to the matters alleged herein, Plaintiff Maribel Alvarez
25   resided in the State of Arizona in Maricopa County.

26

27

28

9.      Plaintiff is a full-time, non-exempt employee of Direct Energy employed as a Customer Service Representative at a Direct Energy call center in Tempe, Arizona beginning in or around May, 2015 and continuing until the present.

10.      As a Customer Service Representative for Direct Energy, Plaintiff was initially paid an hourly wage of $13.00 per hour every week plus non-discretionary incentive pay, which the company terms a "commission," every two weeks.  On or around April 8, 2016, Plaintiff began earning an hourly wage of $13.39 every week plus non-discretionary incentive pay every two weeks.

11.      Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as Exhibit A, is the Consent to Become Party Plaintiff, signed by the above-named Representative Plaintiff, Maribel Alvarez, opting her into this lawsuit.

12.      Upon information and belief, Defendant Direct Energy Business Marketing, LLC is a Delaware corporation authorized to do business in Arizona.

13.      Upon information and belief, Defendant Direct Energy Business, LLC, dba DE Business, LLC is a Delaware corporation authorized to do business in Arizona.

14.      Upon information and belief, Defendant Direct Energy Services, LLC, is a Delaware corporation authorized to do business in Arizona.

15.      Upon information and belief, Defendant Direct Energy Contact Center is a trade name for Clockwork Acquisition II, Inc., which is an Arizona corporation authorized to do business in Arizona.

16.      Upon information and belief, Defendant Direct Energy Leasing, LLC, fka HWOA, LLC is an Arizona corporation authorized to do business in Arizona.

17.      Upon information and belief, Defendant Direct Energy US Home Services, Inc., dba DE Direct Energy US Home Services, Inc. is a Delaware corporation authorized to do business in Arizona.

18.      Upon information and belief, Defendant Direct Energy Marketing, Inc. is a Delaware corporation authorized to do business in Arizona.

19.     Upon information and belief, Defendant Centrica Connected Home US, Inc. is a Delaware corporation authorized to do business in Arizona.

20.     Upon information and belief, Defendant Centrica Holdco GP, LLC is a Delaware corporation authorized to do business in Arizona.

21.     Upon information and belief, Defendant Centrica Holdco, Inc. is a Delaware corporation authorized to do business in Arizona.

22.     Upon information and belief, Defendant Centrica US Holdings, Inc. is a Delaware corporation authorized to do business in Arizona.

23.     Upon information and belief, Defendant Home Warranty of America, Inc. is a Delaware corporation, authorized to do business in Arizona.

24.     Direct Energy hires Customer Service Representatives like Plaintiff at call centers in Arizona primarily to service the company's existing six million customers.

25.     Plaintiff and the other similarly situated Customer Service Representatives are employees as defined in 29 U.S.C. § 203(e)(1) and are non-exempt employees under 29 U.S.C. § 213(a)(1) and A.R.S. § 23-350(2).

26.     At all relevant times, Direct Energy was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 350(3).

27.     At all relevant times, Direct Energy has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

**IV. FACTUAL BACKGROUND**

28.     Direct Energy provides energy related services to more than six million residential and commercial customers throughout the United States.

29.     Direct Energy employs hundreds of Customer Services Representatives at its Call Center locations in Arizona primarily to answer service related questions for individuals who contact Direct Energy.

30.     Plaintiff has been employed by Direct Energy as a Customer Service Representative at its Tempe, Arizona Call Center from in or around May 2015 until the present.

31.     As a Customer Service Representative, Plaintiff familiarizes herself with Direct Energy's business and products.  Direct Energy has customers nationwide, who typically call in to Direct Energy's call center for assistance with services provided by vendors that Direct Energy contracts with.

32.     Plaintiff's responsibilities generally consist of fielding telephone calls from individuals about services provided by vendors that Direct Energy contracts with and referring them to the appropriate vendors for service work.

33.     Plaintiff receives incoming calls from consumers needing plumbing, electrical, and HVAC services.  The intake calls are routed from vendors to the Direct Energy Customer Service Representatives, who then survey the needs of the individuals by telephone from the Direct Energy Call Center.  Plaintiff then provides service to the customers through the vendors who contracted with Direct Energy.  On occasion, Plaintiff identifies needs to sell, cross-sell, and renew warranty products and services to the individuals who call.

34.     Plaintiff also schedules appointments for Direct Energy's customers, occasionally sets up accounts and contracts with new customers, provides resolution for customer concerns, and routes customer calls to vendors contracted with Direct Energy for service and resolution of customer issues.

35.     Plaintiff was paid an hourly wage of $13.00 when she first started working as a Customer Service Representative and her hourly wage eventually increased to $13.39. She also receives non-discretionary incentive pay, termed a "commission" by the company, paid every two weeks.  Plaintiff's incentive pay is based on the number of service appointments she books and the number of warranties she sells or upgrades in relation to the goal set by the company.

36.     For example, Direct Energy will outline goals Plaintiff can meet for incentive pay to increase based on the number of service bookings or warranties sold. Even if Plaintiff does not satisfy the number Direct Energy wants her to achieve, Plaintiff receives $1.25 in incentive pay for each service appointment booked.  If Plaintiff meets ninety percent of the goal set by Direct Energy in booking service appointments, she receives $2.50 in incentive pay for each service appointment booked.

37.     The incentive pay termed a "commission" on Plaintiff's pay stubs did not vary in any way based on the service provided, or on rarer occasion, warranties sold or updated.  Rather, she was to receive incentive pay at a flat dollar amount per service scheduled, sale completed, or updated provided.

38.     Plaintiff's incentive pay termed a "commission" on her pay check consisted of less than one half of overall earnings during the typical pay period.

39.     Direct Energy routinely failed to pay Plaintiff the incentive pay defined on her paystubs as "commissions" that she earned.

40.     Plaintiff complained to her supervisor that her incentive pay was not being paid correctly.

41.     For example, from January 4, 2016 to January 17, 2016, Plaintiff should have been credited for updating or selling warranties for twenty-seven individuals. However, Direct Energy only credited her for eighteen, well short of what she had completed.  As a result, she was not paid incentive pay she earned during that pay period.

42.     Direct Energy also requires Plaintiff to perform work off the clock.  For example, Direct Energy requires all of its Customer Service Representatives, including Plaintiff, to log-in to their phone system and computer prior to clocking in.  This typically takes five minutes at the beginning of each day, and Plaintiff was not compensated for this time.

43.     Direct Energy also failed to properly pay Plaintiff and the Customer Service Representatives all the overtime wages they are due, despite recognizing that the

Customer Service Representatives are entitled to overtime and paying them for hours worked over forty at an improper overtime rate.

44.     Direct Energy's failure to pay wages likely resulted because it failed to maintain accurate records of its Customer Service Representatives time and payroll in violation of the FLSA, including records sufficient to accurately determine the wages and hours of employment for Plaintiff and the similarly situated Customer Service Representatives.

45.     Direct Energy's failure to maintain accurate payroll records also resulted in Plaintiff and the similarly situated Customer Service Representatives not receiving wages for time that they worked.

46.     For example, Plaintiff's payroll statement for the week of July 4, 2016 through July 10, 2016 indicates that she worked 42.17 hours for her regular rate of pay that week of $13.39 and 2.17 hours of overtime that week at a rate of $7.05.  However, Plaintiff's time records for that week indicate she worked a total of 51.92 hours.  The discrepancy between her time records and payroll records demonstrate she worked hours for which she was not paid the proper regular or overtime rate.  In addition, she did not receive the proper overtime rate even for the hours of overtime indicated on her pay statements.  *See* Exhibit B.

47.     Direct Energy also failed to pay Plaintiff for all the overtime she worked. Management routinely accounted for her overtime as paid time off, paying her straight time instead of time and a half.  As a result, Plaintiff did not receive the proper overtime wage for numerous hours in which she worked more than forty hours per week.

48.     Direct Energy failed to pay Plaintiff and the Customer Services Representatives the proper overtime rate.  Direct Energy did not factor into Plaintiff's regular rate of pay the amount of non-discretionary incentive pay she earned each week. As a result, Plaintiff's overtime rate was only based on her regular hourly rate, and the

overtime rate failed to take into account her total compensation, including non-discretionary incentive pay she earned.

49.     For example, Plaintiff's pay statement for the week of October 12, 2015 through October 18, 2015 indicates that she worked 50.92 hours that week. However, Plaintiff was paid for only 5.46 hours of overtime based on one-half of her regular hourly rate of $13.00 per hour for that pay period. Direct Energy did not factor into her regular rate the $429.00 she earned in incentive pay termed "commissions" on her pay statement for that pay period, thereby failing to properly calculate her overtime rate in violation of the FLSA. *See* Exhibit C.

50.     The pay period of June 20, 2016 through June 26, 2016 similarly demonstrates how Direct Energy failed to pay Plaintiff the proper overtime compensation. During that week, Plaintiff's pay statement indicates she worked 50.39 hours. However, the payroll records indicate that Plaintiff was paid for only 5.07 hours of overtime based on her regular hourly rate of $13.39 for that pay period. Direct Energy did not factor into her regular rate the $324.25 in non-discretionary incentive pay she earned, thereby failing to properly calculate her overtime rate in violation of the FLSA. *See* Exhibit D.

51.     Plaintiff routinely works in excess of forty (40) hours per week as part of her regular schedule as a Customer Service Representative, including many hours for which she was required to work off the clock.

52.      Direct Energy typically receives more telephone calls for service requests incoming to the call center from May through September of each year. Customer Service Representatives like Plaintiff usually would work more than forty hours per week during these peak months.

53.     Plaintiff typically works five days a week from 4:00 a.m. until 12:30 p.m. She is also frequently required to work additional overtime, particularly during Direct Energy's predictably busy season from in or around May through in or around September. During this time, she will typically work 53 hours per week.

54.     Despite having worked numerous hours of overtime, Plaintiff was not paid proper overtime wages at a rate of one and one-half times her regular rate of pay for hours worked over forty in a work week.

55.     Direct Energy failed to factor in her incentive pay termed "commissions" on her pay statements to her overtime rate in violation of the FLSA.  Direct Energy also frequently paid her overtime at a rate less than one and a half times her regular rate of pay.

56.     Direct Energy also failed to timely pay Plaintiff all the wages that she was due in violation of the Arizona Wage Statute, including incentive pay she earned termed "commissions" on her pay statement.

57.     Plaintiff's duties, hours and compensation are indicative of the similarly situated Customer Service Representatives.

58.     Direct Energy's improper policies and compensation practices applied to Plaintiff and all similarly situated Customer Service Representatives she purports to represent.

59.     For example, Direct Energy provided its employees, including Plaintiff, with written policies and procedures uniformly applicable to all Customer Service Representatives governing the compensation practices applicable to them.

60.     Further, the job advertisement for Customer Service Representatives states that they are responsible for taking inbound calls from home service brands and providing customers with information about pricing and scheduling appointments for customers.

61.     All the Customer Service Representatives are uniformly subject to the same unlawful compensation practices that Plaintiff was subject to during her employment at Direct Energy.

## V. COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiff brings her claim under the FLSA, 29 U.S.C. § 201 *et seq.*, as a collective action.  Plaintiff brings this action on behalf of herself and others similarly situated, properly defined in paragraph 2 above.

63.     Direct Energy's illegal overtime wage practices were widespread with respect to the proposed Class.  The failure to pay proper overtime was not the result of random or isolated individual management decisions or practices.

64.     Direct Energy's overtime wage practices were routine and consistent. Throughout the Liability Period, employees regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

65.     Other Customer Service Representatives performed the same or similar job duties as Plaintiff.  Moreover, these Customer Service Representatives regularly worked more than forty hours in a workweek.  Accordingly, the employees victimized by Direct Energy's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

66.     Direct Energy's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action.  Thus, Plaintiff's experience is typical of the experience of the others employed by Direct Energy.

67.     All Customer Service Representatives, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40).  Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

## VI. CLASS ACTION ALLEGATIONS

68.     The state law claims under the Arizona Wage Statute are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3).  The Class is defined in paragraph 2 above.

69.     Throughout the Liability Period, Direct Energy has employed hundreds of Customer Service Representatives in Arizona.  The Class is therefore so numerous that joinder of all members is impracticable.  Members of the Class can readily be identified from business records maintained by Direct Energy.

70.     Proof of Direct Energy's liability under the Arizona Wage Statute involves factual and legal questions common to the Class.   Whether Defendants paid Class members the proper wages due in accordance with A.R.S. §§ 23-351, 23-353, 23-355 is a question common to all Class members, including but not limited to whether they were paid all the commissions earned.

71.     Like Plaintiff, all Class members worked without being paid statutorily required wages.  Plaintiff's claim is therefore typical of the claims of the Class.

72.     Plaintiff has no interest antagonistic to those of other Class members and has retained attorneys who are knowledgeable in wage and hour and class action litigation. The interests of Class members are therefore fairly and adequately protected.

73.     This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

74.     In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The Arizona Wage Statute recognizes that employees who are denied their wages often lack the ability to enforce their rights against employers with far superior resources.   Further, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it difficult for members of the Class to individually redress the wrongs done to them.

75.     Plaintiff's Arizona Wage Statute claim is easily managed as a class action. The issue of liability is common to all Class members.  Although the amount of damages may differ by individual, the damages are objectively ascertainable and can be straightforwardly calculated.

## VII. COUNT ONE

**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA - 29 U.S.C. § 207 et seq.)**

76.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

77.     Plaintiff was a non-exempt employee entitled to the statutorily mandated overtime pay according to the FLSA.

78.     Direct Energy was an employer pursuant to 29 U.S.C. § 203(d).

79.     Direct Energy failed to comply with 29 U.S.C. § 207 because Plaintiff worked for Direct Energy in excess of forty hours per week, but Direct Energy failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

80.     Direct Energy's failure to pay overtime to Plaintiff was willful.   Direct Energy knew Plaintiff was working overtime but failed to properly pay overtime wages. Direct Energy had no reason to believe its failure to pay overtime was not a violation of the FLSA.

81.     At all relevant times, Direct Energy willfully, regularly, and repeatedly failed, and continues to fail to make, keep, and preserve accurate time records required by the FLSA with respect to Plaintiff and the other similarly situated Customer Service Representatives, including records sufficient to accurately determine the wages and hours of employment pertaining to Plaintiff and the Customer Service Representatives.

82.     Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

## VIII. COUNT TWO

**(Failure to Pay Timely Wages Due - Arizona Wage Statute)**

83.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

84.     Direct Energy was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

85.     Direct Energy was aware that, under A.R.S. §§ 23-351-353, it was obligated to pay all wages due to Plaintiff.

86.     Direct Energy failed to timely pay Plaintiff wages she was due without a good faith basis for withholding the wages.

87.     Direct Energy has willfully failed and refused to timely pay wages due to Plaintiff.  As a result of Direct Energy's unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## IX. REQUESTED RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays:

A.     For the Court to order Direct Energy to file with this Court and furnish to Plaintiff's counsel a list of the names and addresses of all current and former Customer Service Representatives who worked at call centers for the past three years;

B.     For the Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to all current and former Customer Service Representatives who worked at call centers for the past three years immediately preceding this action, informing them that this action has been filed and the nature of the action, and of their right to opt-into this lawsuit if they worked hours in excess of forty (40) hours in a week during the Liability Period, but were not paid overtime as required by the FLSA;

C.     For the Court to declare and find that Direct Energy committed one or more of the following acts:

i.      violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff and persons similarly situated who opt-into this action;

ii.     willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

iii.     willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff;

D.     For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and/or treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

E.     For the Court to award interest on all overtime compensation due accruing from the date such amounts were due;

F.     For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

G.     For the Court to award restitution;

H.     For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

I.     For the Court to award pre- and post-judgment interest;

J.     For the Court to award Plaintiff's resulting consequential damages, in an amount to be proven at trial; and

K.     For such other relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

88.     Plaintiff, on behalf of herself and all others similarly situated, hereby demands trial of her claims by jury to the extent authorized by law.

DATED:  October 21, 2016

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.


  /s/ Ty D. Frankel
Ty D. Frankel
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone:  (602) 274-1100
Facsimile:  (602) 798-5860

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
Patricia N. Syverson
600 W. Broadway, Suite 900
San Diego, California 92101

Attorneys for Plaintiff